**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**SHELIA FORD** **PLAINTIFF**

**V.** **NO. 4:17-CV-00328 JLH/BD**

**NANCY A. BERRYHILL, Acting Commissioner**
**Social Security Administration** **DEFENDANT**

# RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to Judge J. Leon Holmes. You may file written objections to this Recommendation. If you file objections, they must be specific and must include the factual or legal basis for your objection.

Your objections must be received in the office of the Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction:

On February 6, 2013, Shelia Ford applied for disability benefits, alleging disability beginning February 2, 2011. (Tr. at 10) Ms. Ford's claims were denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 22) The Appeals Council denied her request for review. (Tr. at 1) The ALJ's decision now stands as the final decision of the Commissioner, and

Ms. Ford has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II. <u>The Commissioner's Decision</u>:

The ALJ found that Ms. Ford had not engaged in substantial gainful activity since the alleged onset date of February 2, 2011. (Tr. at 12) At Step Two of the five-step analysis, the ALJ found that Ms. Ford has the following severe impairment: chronic obstructive pulmonary disease, hypertension, arthritis, obesity, hearing disorder, degenerative joint disease, sleep disorder, status post left ulnar nerve surgery, degenerative disc disease, and carpal tunnel syndrome. *Id.*

After finding that Ms. Ford's impairments did not meet or equal a listed impairment (Tr. at 13), the ALJ determined that Ms. Ford had the residual functional capacity ("RFC") to perform sedentary work with additional limitations. *Id.* She could never climb ladders, ropes, or scaffolds, and could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; she was limited to frequent use of her hands to handle and finger; she needed the option to stand for 5 minutes after sitting for 20 minutes throughout the workday; she would have to avoid even moderate exposure to fumes, odors, dust, gases, poor ventilation, and similar irritants; and she was limited to jobs where there is no requirement of frequent verbal communication, frequent telephone communication, or complex verbal communication. *Id*.

The ALJ next found that Ms. Ford was unable to perform past relevant work.(Tr. at 21) At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Ms. Ford's age, education, work experience and RFC, she was capable

of performing work in the national economy as a document preparer. (Tr. at 21-22) Based on the determination, the ALJ held that Ms. Ford was not disabled. *Id.*

## III. **Discussion**:

### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means "enough that a reasonable mind would find it adequate to support he ALJ's decision." *Id.*; *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009)(citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

### B. Ms. Ford's Arguments on Appeal

Ms. Ford contends that substantial evidence does not support the ALJ's decision to deny benefits. Her sole argument is that the job identified by the VE (document preparer) has been rendered obsolete by today's technology, so the Step Five finding that she could perform work in the national economy was error. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Ms. Ford's main complaints were shortness of breath related to COPD, pain from

carpal tunnel syndrome, and back and neck pain. With respect to the COPD diagnosis, the Court notes that Ms. Ford explained she had smoked about a pack of cigarettes a day for over thirty years, and she continued to smoke in spite of her doctor's advice to quit. (Tr. at 649) In April, May, October, and November of 2012, Ms. Ford reported to her doctors that she still smoked. (Tr. at 393, 395, 404, 406) She declined her doctor's advice to call a smoking cessation hotline. (Tr. at 393) She also indicated she still smoked in January, February, and March of 2013, as well as in April and December of 2014. (Tr. at 387-391, 649, 683) As of the date of the hearing, Ms. Ford said she was smoking marijuana two to three times a day. (Tr. at 70)

Continuing to smoke with a respiratory condition in spite of doctors' orders to quit undermines a claimant's claims of disability. *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997)(the ALJ correctly discounted claimant's credibility when claimant failed to stop smoking despite physician's orders). Additionally, Ms. Ford, who admitted to drinking three-to-four vodka drinks a day, reported that stomach issues resolved when she stopped drinking. (Tr. at 398) Still, at the hearing, she told the ALJ she continued to drink. (Tr. at 72) And on February 1, 2015, she reported to her doctor that she was using illicit drugs. (Tr. at 795)

Ms. Ford did have carpal tunnel surgery on her left hand on August 1, 2013, and wore a splint thereafter. (Tr. at 508-510) Less than a month after surgery, the splint was removed, the scar appeared to have healed, and she did not have any ulnar motor

symptoms. (Tr. at 528) By December 2013, Ms. Ford was doing well and continued to improve. (Tr. at 582) In January 2015, Ms. Ford was diagnosed with right carpal tunnel syndrome, but she declined surgical intervention. (Tr. at 786) Her doctor told her to return as needed. *Id.* The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

X-rays of the cervical and lumbar spine showed some degenerative disc disease, but normal findings otherwise. (Tr. at 331, 341) A lumbar MRI showed mild degeneration with no disc herniation. (Tr. at 335) Objective tests showing mild-to-moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). Furthermore, Ms. Ford reported that pain medications were relatively effective. (Tr. at 395) Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Ms. Ford's doctor cautioned against continuing tramadol in the face of a relatively normal MRI. (Tr. at 399)

While Ms. Ford alleges disabling pain, her daily activities do not support her allegations. She took care of chores for her father, prepared daily meals, drove, shopped in stores, went to church, and spent time with others. (Tr. at 76-77, 312-315) Such daily activities undermine her claims of disability. *Shannon v. Chater,* 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart,* 314 F.3d 964, 967 (8th Cir. 2003). The record overall does not suggest Ms. Ford is unable to perform any work.

At Step Five, the VE proposed the job of document preparer as one suiting Ms. Ford's RFC. The VE drew her testimony from the Dictionary of Occupational Titles, the publication the Administration relies upon for occupational evidence. But Ms. Ford suggests that the job is outdated. *See Moore v. Colvin*, 769 F.3d 987, 989 (8th Cir. 2014); *see Murphy v Astrue*, 2009 U.S. Dist. LEXIS 104224 *28-29 (D. Neb. November 9, 2009)(argument that DOT is outdated is misplaced because regulations suggest DOT as source for vocational information). Ms. Ford reasons that the job is obsolete because part of the job description in the DOT lists microfilming. However, the Eighth Circuit has repeatedly recognized that DOT definitions are "simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Moore*, 769 F.3d at 989*; see Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000)(not all of the jobs in every category have requirements identical to or as rigorous as those listed in the [Dictionary of Occupational Titles]).

When an ALJ proposes a hypothetical incorporating all of a claimant's limitations, as he did here, the VE testimony constitutes substantial evidence. See *Pearsall v. Massanari*, 274 F.3d 1211, 1220 (8th Cir. 2001). In the decision, the ALJ wrote that "pursuant to SSR 00-4p, the undersigned has determined that the [VE's] testimony is consistent with the information contained in the DOT." (Tr. at 22). An ALJ is not required to conduct an independent investigation on VE testimony/DOT conflict: "neither case law nor SSR 00-4p require an ALJ to resolve a conflict that was not identified and

was not otherwise apparent." See *Marley v. Comm'r. of Soc. Sec*., 2015 U.S. Dist. LEXIS 23419 *10 (M.D. Fla. Feb. 26, 2015). Furthermore, Ms. Ford's attorney certainly did not dispute the VE testimony at the hearing level. (Tr. at 82-83) Her attorney had the opportunity for closing argument and did not raise this issue. See *Kennedy v. Colvin*, 2014 U.S. Dist. LEXIS 176874 *12 (W.D. Ark. December 22, 2014)(attorney did not raise issue of whether job was obsolete at the hearing). Finally, there is no law from this Circuit indicating that the job of document preparer has been rendered obsolete. As there was no apparent conflict in the DOT and the VE testimony, the ALJ fulfilled his duty at Step Five.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Ford was not disabled. The ALJ fulfilled his duty at Step Five and properly relied upon the VE testimony. The decision, therefore, should be affirmed and the case dismissed, with prejudice.

DATED this 23rd day of February, 2018.

________________________________________
UNITED STATES MAGISTRATE JUDGE